UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHERYL A. MENACHER,  )  | CIV.  04-5102-KES |
| )  | |
| Plaintiff,  )  | |
| )  | |
| vs.  )  | ORDER AFFIRMING THE |
| )  | COMMISSIONER'S DECISION |
| JO ANNE B. BARNHART,  )  | |
| Commissioner, Social Security  )  | |
| Administration,  )  | |
| )  | |
| Defendant.  )  | |

Plaintiff, Cheryl A. Menacher, moves the court for a reversal of the Commissioner of Social Security's decision denying her application for benefits under Titles II and XVIII of the Social Security Act for a period of disability between November 20, 1999, and February 12, 2001.  Defendant opposes the motion.  Menacher's motion is denied.

## FACTS

Menacher was born on May 13, 1946.  She has a high school education and completed a security officer training program.  She has worked as a security officer and secretary.  Menacher worked as a community support specialist for the Black Hills Special Services Cooperative from June, 1997, to November 1999.  She alleged that she became disabled on November 20,

1999, and resigned from her job due to severe fatigue and other symptoms of autoimmune hepatitis syndrome. (Tr. 70, 85, 105, 113, 119, 125).

Menacher reported that she had a two month period of severe fatigue in 1960 during which she may have been jaundiced. She has a history of asthma, hypertension and "used to be a fairly heavy alcohol user," but quit drinking in 1986. Since January of 1994, she has had abnormal liver test results related to autoimmune hepatitis and cirrhosis of the liver. (Tr. 181-82).

On October 24, 1999, Menacher sought treatment at the Indian Health Service (IHS) emergency room in Rapid City for abdominal pain and distention. She reported that the pain and bloating had been gradually getting worse over the past six months. She returned to IHS on November 3 and 4, 1999, complaining of ascites pain.[1] Menacher had a liver scan and laboratory tests that led to a tentative diagnosis of primary biliary cirrhosis of the liver on November 3, 1999. On November 12, 1999, she returned for a followup appointment and complained of ascites pain and nausea. Menacher was diagnosed with chronic autoimmune hepatitis. (Tr. 214, 236-38).

Menacher returned to IHS regularly for monthly follow up visits. She complained of nausea and occasional severe acid reflux on November 21,

---

[1] Ascites is an "accumulation of serous fluid in the spaces between tissues and organs in the cavity of the abdomen." Merriam-Webster Medical Dictionary, available at www.intelihealth.com (2004).

1999, and December 20, 1999.  She was treated with several prescription medications, including Prilosec and Zantac.[2]  On March 16, 2000, she reported lower back pain in addition to her chronic autoimmune hepatitis.  She stopped taking Prilosec because it caused diarrhea and cramps.  Menacher was diagnosed with secondary thrombocytopenia[3] and gastroesophageal reflux disease (GERD)[4] on May 22, 2000.  She started taking Prilosec again, along with Zantac, Atarax,[5] and several other prescription medications.  (Tr. 228, 230, 234-35).

On July 28, 2000, Menacher complained of dizziness, weakness, and fatigue, and she was diagnosed with hypoglycemia episodes.  She returned to IHS for a medication refill on August 25, 2000, and reported lower back pain and that she was fatigued.  Menacher was given a refill of her Salsalate[6]

---

[2]Prilosec is used to treat ulcers, and Zantac is prescribed for ulcers and acid reflux.  See www.rxlist.com (2005).

[3]Thrombocytopenia is "persistent decrease in the number of blood platelets that is often associated with hemorrhagic conditions."  Merriam-Webster Medical Dictionary, available at www.intelihealth.com (2005).

[4]"[A] highly variable chronic condition that is characterized by peridodec episodes of gastroesophageal reflux usually accompanied by heartburn and that may result in histopathological changes in the esophagus."  Merriam-Webster Medical Dictionary, available at www.intelihealth.com (2005).

[5]Atarax is an antihistamine used to treat runny nose, watery eyes, sneezing and other hay fever symptoms.  See www.rxlist.com (2005).

[6]Salsalate is an anti-inflammatory agent indicated for relief of arthritis symptoms.  See www.rxlist.com (2005).

prescription, which she reported helped her back pain. On October 18, 2000, Menacher complained of chronic lower back pain and chronic sacroiliitis,[7] and received another Salsalate refill. Menacher had a back examination on December 13, 2000. X-rays revealed mild degenerative spurring and mild narrowing of her disc spaces. (Tr. 220, 223, 225, 331).

On January 26, 2001, Menacher went to IHS because she had vomited blood the previous day. She complained of severe stomach pain. Her dosage of Prevacid[8] was increased. An abdominal x-ray taken that day was unremarkable except for the lumbar spine degenerative changes. (Tr. 325, 330).

Menacher saw Chad B. Hanna, M.D., on January 29, 2001, for a Disability Determination Services (DDS) physical exam. Menacher reported that her energy level had been diminished for the previous three to four years, and that it was getting worse. Her back pain was getting worse. Menacher reported that the fatigue and back pain "inhibited her ability to work and she is very skeptical that she would be able to carry on any full-time employment." Her abdomen was soft, non-tender, and non-distended, and Dr. Hanna saw no evidence of ascites. Menacher could bend at the waist

---

[7]Sacroiliitis is inflammation of the sacroiliac joint or region, which is in the lower back. See Merriam-Webster Medical Dictionary, available at www.intelihealth.com (2005).

[8]Prevacid is indicated for ulcer treatment. See www.rxlist.com (2005).

but had difficulty getting back up. She could squat, but could not get back up without grabbing onto a stool for support. Dr. Hanna noted that complaints of fatigue and joint pain were consistent with autoimmune hepatitis. Dr. Hanna stated that Menacher's ability to lift and carry was significantly diminished, and that because of her fatigue, her ability to stand, walk, or sit for an 8-hour day might be limited. Dr. Hanna diagnosed fatigue possibly associated with autoimmune hepatitis and lower back pain secondary to osteoarthritis. To determine whether she was permanently disabled, Dr. Hanna recommended that Menacher have an MRI of her lower back and that her medical records from her initial workup for autoimmune hepatitis should be reviewed. (Tr. 272-74).

Menacher returned to the Rapid City IHS on February 1, 2001, because she had vomited blood again. Her esophagus was "abnormal." Dr. Frei referred her to Barbara Stinson, M.D., for an endoscopy and upper gastrointestinal (UGI) tests. The tests revealed difficulty in swallowing, aspiration,[9] and stricture[10] in her esophagus. The findings were strongly

---

[9] As used in the report, aspiration is the "taking of foreign matter into the lungs with the respiratory current." Merriam-Webster Medical Dictionary, <u>available at</u> www.intelihealth.com (2005).

[10] An abnormal narrowing of a bodily passage (as from inflammation, cancer, or the formation of scar tissue). Merriam-Webster Medical Dictionary, <u>available at</u> www.intelihealth.com (2005).

suggestive of gastroesophageal reflux with esophageal varices[11] and a possible tumor. Dr. Stinson discussed the results with Dr. Frei and recommended more testing. (Tr. 324, 329).

Menacher saw Dale R. Bachwich, M.D., for a gastroenterology consult on February 9, 2001. She complained of difficulty swallowing over the previous eight to twelve months. Menacher also reported fatigue, abdominal distention, occasional jaundice, swelling feet, and sharp to dull chronic pain in her upper right quadrant. A physical exam showed that her abdomen was slightly distended. Dr. Bachwich recommended an upper endoscopy, a CT scan of her abdominal cavity, liver and spleen, liver enzyme tests, and consideration of a liver biopsy. He also recommended treatment of her autoimmune hepatitis with Prednisone and Imuran. (Tr. 355-57).

Dr. Bachwich performed the endoscopy on February 12, 2001. The test revealed that Menacher had bleeding esophageal varices, gastric varices, inflammation of the esophagus, and gastric polyps overlying varices that bled spontaneously when brushed by the endoscope and were easily crumbled. Dr. Bachwich recommended treatment with a proton pump inhibitor,[12] a

---

[11]Varices are the plural of varix, which is "an abnormally dilated and lengthened vein, artery, or lymph vessel; especially varicose vein." Merriam-Webster Medical Dictionary, available at www.intelihealth.com (2005).

[12]Any of a group of drugs (such as Prilosec) that is used to inhibit gastric acid secretion in the treatment of ulcers and gastroesophageal reflux disease. Merriam-Webster Medical Dictionary, available at www.intelihealth.com (2005).

reassessment of her chronic liver disease, and he referred her to a liver transplant center. On February 13, 2001, Menacher saw Dr. Bachwich for a CT scan and a followup to her endoscopy. The CT scan revealed extensive varices and possible cirrhosis of the liver, but no ascites. Dr. Bachwich recommended that she consult with a liver transplant center and begin therapy for her autoimmune hepatitis. On February 20, 2001, she was referred to the University of Nebraska Medical Center for a liver transplant consultation. (Tr. 318, 354).

     Dr. Thomas Sears of the University of Nebraska Medical Center gastrointestinal clinic examined Menacher on March 20, 2001. Her symptoms included permanent fatigue, mild weakness, possible fluctuating jaundice, and itchiness. She denied neurological symptoms, such as fits, faints, funny turns, and weakness. Menacher showed no visible jaundice, distress, or discomfort. Her abdomen was mildly protuberant. Dr. Sears advised her to start taking Inderal and continue diuretic therapy for her symptoms, consider a liver biopsy, and consider a shunting procedure. After examining Menacher and discussing the case with Dr. Sears, Dr. Michael Sorrell of the University of Nebraska liver transplant office agreed with the recommendations. (Tr. 441-46).

---

See also  www.rxlist.com (2005).

**ALJ DECISION**

Administrative Law Judge (ALJ) James W. Olson applied the sequential five-step evaluation process.[13] At the first step of the evaluation, the ALJ found that Menacher had not engaged in substantial gainful activity since her alleged disability onset date of November 20, 1999. At the second step, the ALJ found Menacher had the following severe impairments: chronic hepatitis; esophageal varices; gastric polyps; lumbar spine degenerative changes; intermittent treated hepatic encephalopathy; mild controlled hypothryoidism; and functioning asymptomatic thyroid adenoma. Based on the medical record and medical expert opinion, the ALJ found that Menacher's liver disease was disabling since February 12, 2001, pursuant to Social Security Listing 5.05. Before that date, Menacher had the residual functional capacity (RFC) to perform her past relevant work as an employment counselor or security officer. The ALJ found that Menacher suffered from liver disease

---

[13] The five-step sequential evaluation process as outlined by the Eighth Circuit is: (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).

prior to February 12, 2001, but that her allegation that it was disabling was not credible.

Menacher subsequently appealed the finding that she was not disabled between November 20, 1999, and February 12, 2001, to the Appeals Council. The Appeals Council denied her claim. Menacher now appeals to this court.

## STANDARD OF REVIEW

This court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). Substantial evidence is less than a preponderance, but is enough that a reasonable mind might find it adequate to support the ALJ's conclusion. Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In determining whether existing evidence is substantial, we consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). The court will not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Rather, if after reviewing the record the court finds that "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, we must affirm the

decision" of the Commissioner. Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)).

**DISCUSSION**

**1. The ALJ's Credibility Finding**

The ALJ found that Menacher's subjective complaints that her condition was disabling prior to February 12, 2001, were not credible. Menacher contends that the ALJ's credibility findings are not supported by substantial evidence. In Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit listed factors that an ALJ should consider relating to a claimant's subjective complaints. These factors include the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Id. While an ALJ need not methodically discuss each Polaski factor, the factors must be acknowledged and examined. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).

Menacher alleges that the ALJ incorrectly discredited her complaints of fatigue and back pain. Regarding Menacher's fatigue symptoms, the ALJ noted that she "did not complain of significant fatigue to her treating sources" prior to February 12, 2001. (Tr. 23) (emphasis added). Menacher testified that in her final month of work (November 1999), she knew her health problems were getting worse because she "was getting extremely tired" on the

10

job. (Tr. 560-61). The medical record around this time period shows that she mostly complained of abdominal pain, and did not mention fatigue until July 28, 2000, and August 25, 2000. See Tr. 223, 225, 236-38. She was not diagnosed with fatigue until January 29, 2001, when she reported that she had been fatigued for three to four years but that it had recently gotten worse. (Tr. 272-74).

The court will not disturb the decision of an ALJ who seriously considers, but for good reason expressly discredits a claimant's subjective complaints, if those reasons are supported by substantial evidence in the record as a whole. Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999). Because Menacher did not mention fatigue to her doctors until well after her alleged disability onset date, and was not diagnosed with fatigue at the time, it is evident that the ALJ relied on substantial evidence in the record in making his credibility determination regarding her fatigue. "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe, 226 F.3d at 972.

In a medical source statement prepared on December 10, 2003, Dr. Frei opined that Menacher suffered "severe fatigue" between November 20, 1999, and February 12, 2001. Dr. Frei was Menacher's treating physician. While evidence from a treating physician must be given great weight "with deference to the physician's findings over an examining

physician or consultant," Morse v. Shalala, 16 F.3d 865, 872 (8th Cir. 1994), a treating physician's opinion is entitled to less weight when it is inconsistent with other substantial evidence of the record. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002). A treating doctor's retrospective opinion is not entitled to controlling weight when it is inconsistent with the doctor's contemporaneous treating notes. Id. Here, Dr. Frei's opinion is inconsistent with other substantial evidence in the record and inconsistent with her own notes from the relevant time period. Dr. Frei did not diagnose fatigue during the relevant time period, despite her regular exams of Menacher.

      Menacher argued it was improper for the ALJ to discredit her back pain complaints by pointing out that she had adequate muscle strength, and that he incorrectly stated that she did not regularly take pain medication. The medical record does indicate that she complained of back pain regularly and was prescribed Salsalate to treat it. The record also indicates that she had problems straightening up after bending at the waist or squatting. Lumbar spine x-rays, however, showed only mild degenerative changes and disc space narrowing.

      Although the ALJ was incorrect in reporting that she took no back pain medication, this is not reversible error because the evidence as a whole supports his conclusion that Menacher was not disabled before February 12, 2001. The Eighth Circuit Court of Appeals has repeatedly stated that "an

arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case." Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) (quoting Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1997).  The ALJ may reject allegations of disabling pain that are inconsistent with the plaintiff's daily activities and medical evidence. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).  In this case, the record contains evidence inconsistent with an allegation of disabling back pain.  In her disability application, Menacher reported that she treated her back pain by walking or resting periodically, and that the Salsalate helped ease her pain.  (Tr. 135).  Her back pain had increased in the previous 12 months, but she noted that she did not need help completing household chores and she did some gardening.  (Tr. 136).  Her self-reported daily activities do not support a finding of disability prior to February 12, 2001. See Guilliams, 393 F.3d at 802 (finding testimony that plaintiff performed household chores is inconsistent with claims of disabling pain).

Menacher argued that the ALJ erroneously concluded that her liver disease was adequately controlled with relatively infrequent medical treatment during the relevant time period.  The record does indicate that she was treated at least once a month for liver problems since October 1999. Many of these visits, however, were just to refill her prescriptions.  She was

diagnosed with liver disease in 1994 and continued to work until November 1999. Menacher's ability to work after being diagnosed with a stable, long-term illness supports the conclusion that she was not disabled prior to February 12, 2001. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). The medical evidence indicates that her liver disease was manageable for several years and grew much worse in early 2001, which coincides with the finding that she became disabled on February 12, 2001.

Menacher contends the ALJ erred in failing to mention the opinion of Dr. Hanna, who examined her on January 29, 2001, and found that Menacher "probably could not do much lifting or carrying at all." Although the ALJ must develop the record fully and fairly, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). Because Dr. Hanna's report contains strong evidence in support of a disability finding, and Menacher was found to be disabled as of February 12, 2001 (just two weeks after Dr. Hanna's exam), it is very likely that the ALJ considered the report. Any error in failing to mention it in the opinion is harmless error.

**2.   The RFC Determination**

Menacher contends that the ALJ ignored her symptoms of fatigue, nausea, and confusion in determining she had the RFC to perform light work

14

with no more then occasional stooping until February 12, 2001, and that she had acquired work skills that would transfer to semi-skilled positions.  As noted above, the ALJ's failure to mention certain evidence does not indicate that he ignored it.  The medical record indicates that her complaints of fatigue did not rise to the level of being severe during the relevant time period and that her nausea was intermittent.  Although she testified that she was having problems with confusion during the time in question, she did not report it to her doctors.

**3.    The Finding that Menacher Could Perform Past Relevant Work**

Menacher contends that the ALJ erred in finding that she could perform her past relevant work as a security officer and employment officer.  The ALJ found that the security officer job was semi-skilled light work and the employment officer job was skilled sedentary work.  Menacher contends that this finding lacked detail and that the ALJ failed to review the physical and mental demands of her previous jobs.  "A comparison of the claimant's residual functional capacity with the actual functional demands of her particular past employment is essential to a determination that she is capable of performing her past relevant work."  Kirby v. Sullivan, 923 F.2d 1323, 1327 (8th Cir. 1991) (remanding for further development of record and suggesting that ALJ consult Dictionary of Occupational Titles for a definition of plaintiff's job as it is usually performed).  In this case, the ALJ heard

15

testimony from a vocational expert that Menacher's previous jobs were either light or sedentary work. (Tr. 571). The vocational expert testified that both jobs would cause a moderate level of stress. Id. Thus, the ALJ reviewed the physical and mental demands of her previous jobs.

During the relevant time period, none of Menacher's physicians had recommended that she avoid moderate levels of stress or light work. Dr. Campodonico reviewed her record and answered interrogatories on September 1, 2002. He estimated that she became disabled on September 1, 2001. Dr. Campodonico noted that stress could aggravate her condition and that her ability to lift would be limited by fatigue and back pain, but he did not apply these limitations to the relevant time period. (Tr. 501-08). Accordingly, the court finds that the RFC determination and the finding that Menacher could perform two of her past relevant jobs was supported by substantial evidence.

## CONCLUSION

Substantial evidence in the record exists to support the Commissioner's decision that Menacher did not meet the disability requirements of the Social Security Act prior to February 12, 2001. Accordingly, it is hereby

ORDERED that the Commissioner of Social Security's decision denying Menacher's claim for disability insurance benefits and supplemental security

income under Titles II and XVIII of the Social Security Act prior to February 12, 2001, is affirmed.

Dated August 4, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE